IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA LUISA AMOR, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. EP-16-CV-122-MAT |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Maria Luisa Amor ("Amor") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Amor was sixty-two years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (R. 34).[2] Her job experience included working as a cashier II, a sales attendant,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this case.

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

an assembler of small products, and a hand packer. (R. 41). Amor filed an application for DIB on February 1, 2013, and an application for SSI on February 21, 2013, in which she alleged disability beginning on December 12, 2012, due to arthritis, diabetes, high blood pressure, and hearing. (R. 180–89, 190–94, 217). After her applications were denied initially and upon reconsideration, Amor requested a hearing. (R. 90–95, 98–101, 102–03).

On September 24, 2014, a hearing was conducted before the ALJ. (R. 25–44). On December 23, 2014, the ALJ issued a written decision denying benefits on the ground that Amor was capable of performing her past relevant work as a cashier II and as a sales attendant. (R. 12–20). On February 22, 2016, the Appeals Council denied Amor's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–3).

In her written decision, the ALJ found that Amor had the following severe impairments: hearing loss not treated with cochlear implant, diabetes mellitus, vertiginous syndromes, and osteoarthritis. (R. 14). However, the ALJ also found that these impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15). The ALJ determined that Amor had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Amor] cannot have more than moderate noise level exposure, and cannot have work that requires the use of the telephone. She must avoid hazards, including unprotected heights and dangerous moving machinery. Light work involves lifting and carrying up to 10 pounds frequent [sic] and 20 pounds occasionally; standing or walking for up to 6 hours per day; and sitting for about 2 hours per day.

(R. 17). Amor argues that the ALJ erred in her evaluation of the medical opinion evidence, including failing to explain the exclusion of "undisputed limitations" from the RFC finding, and that this error is not harmless because the ALJ's decision is not based on substantial evidence. (Pl.'s Br., ECF No. 19, at 3–4).

## II. DISCUSSION

A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations omitted). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* However, the ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. *Newton*, 209 F.3d at 455.

### B. THE ALJ ERRED IN HER CONSIDERATION OF THE MEDICAL OPINION EVIDENCE

Amor asserts that the ALJ erred by not considering the factors of 20 C.F.R. § 404.1527 with respect to the medical opinion evidence. (Pl.'s Br., ECF No. 19, at 4). Amor further contends that the ALJ was required to either include, or explain the exclusion of, work-related limitations opined by Jeanine Kwun, M.D., the state agency reviewing consultant at the reconsideration level, despite assigning "great weight" to Dr. Kwun's opinion. *Id.* at 5. According to Amor, the ALJ had a duty to explain all the key findings in her decision, including stating her reason for rejecting evidence. *Id.* at 5–6. More specifically, Amor asserts that if an ALJ accepts a medical opinion, the ALJ must explain why any limitations in the opinion were excluded and give "good reasons" for the exclusion. *Id.* at 4.

Pursuant to 20 C.F.R. §§ 404.1527(b) and 416.927(b), in determining whether a claimant is disabled, medical opinions are considered "together with the rest of the relevant evidence" received. Several factors are considered in determining the weight to give medical opinions, including, *inter alia*, the treatment and/or examining relationship with the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the extent to which a medical source is familiar with the other information in the claimant's case record. *Id.* at §§ 404.1527(c) and 416.927(c). An ALJ must consider any prior administrative medical findings of the Federal or State agency medical or psychological consultants, as appropriate, but is not required to adopt the findings. *Id.* at §§ 404.1513a(b), 404.1527(c), 416.927(c), and 416.913a(b). However, the ALJ "must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996). Still, the ALJ is responsible for reviewing the evidence and making administrative findings of fact and conclusions of law. 20 C.F.R. § 404.1513a(b).

Addressing the medical opinions in her decision, the ALJ explained that she gave little weight to the findings of Scott Spoor, M.D., the state agency physician at the initial level, because they were not consistent with the medical record. (R. 18). The ALJ gave great weight to Dr. Kwun's findings at the reconsideration level because "they evaluate the claimant's age, education, and experience while providing specific limitations based on the claimant's severe impairments." *Id.* Had the ALJ adopted all of Dr. Kwun's findings, these reasons would have sufficed to demonstrate that the ALJ properly considered the relevant factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), especially considering that neither state agency physician treated or examined Amor.

However, despite giving great weight to Dr. Kwun's findings, the ALJ did not incorporate in the RFC two of the limitations included in Dr. Kwun's opinion. (R. 17, 18). Dr. Kwun opined that Amor's communicative limitations included: "Frequent problems with loud or normal speech. Avoid tasks that require regular communication via phone, intercom or two-way radio. Avoid lengthy verbal communication. Occasional short conversations possible with coworkers and supervisors." (R. 72, 82). The ALJ assessed Amor's RFC relating to her hearing impairment as limited to no more than moderate noise level exposure and no work that requires the use of the telephone. (R. 17). The ALJ did not explain why she did not include the last two described limitations in her RFC assessment. (*See* R. 18).

Instead, the ALJ explained that the RFC was supported "by an assessment of the sparse medical record from multiple medical sources that have given the undersigned a picture of the claimant's residual functional capacity" and determined that Amor's statements were only partially credible after weighing them against the medical opinions. *Id.* These reasons explain why Amor's statements were called into doubt, but not why certain medical opinions were

5

discounted. Accordingly, the Court finds that the ALJ made an error of law, "by failing to articulate her reasons for rejecting the more restrictive state agency opinions." *See Levine v. Astrue*, 2010 WL 2464907, at *3 (D.S.C. June 11, 2010); *see also Davis v. Massanari*, 2001 WL 34043759, at *5 (D. Ore. Aug. 15, 2001) ("[T]he ALJ failed to explain what weight, if any, was given to Dr. LeBray's opinion, or portions thereof, and has not otherwise included Davis' limitations assessed by Dr. LeBray in the hypothetical question posed to the VE. Therefore, the ALJ's finding at step four that Davis is capable of returning to her past work is not supported by substantial evidence."); *Morris ex rel. N.M. v. Astrue*, 2012 WL 2681456, at *9 (E.D. Va. May 2, 2012) ("Although the ALJ was not required to *follow* the state agency's initial determination that plaintiff had a marked limitation in the Attending and Completing Tasks domain, he did have a duty to explain the extent of his consideration of that decision or his reasons for rejecting it. . . . [H]is failure to do so is legal error.") (emphasis in original) (citing *Levine*, 2010 WL 246807 at *3)). Accordingly, the Court finds that the ALJ erred in her consideration of the assignment of weight to the medical opinion evidence.

C. THE ALJ'S ERROR IS HARMLESS

Having concluded that the ALJ erred in not sufficiently explaining the weight she gave to Dr. Kwun's medical opinion, the Court must determine whether this error was harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (internal quotation marks omitted).

Amor asserts that the error is not harmless because it resulted in an RFC assessment that does not include all of Amor's limitations related to her hearing impairment. (Pl.'s Br., ECF No.

6

19, at 9). Amor further argues that the hypothetical posed to the vocational expert based on an inaccurate RFC cannot support the ALJ's decision to deny benefits. *Id.* The Court first considers whether substantial evidence supports the ALJ's RFC assessment relating to Amor's hearing impairment.

The medical records from Montwood Family Medical Center, dated August 31, 2010, to April 30, 2012, show Amor's diagnoses and treatment for some of the conditions for which she alleges disability. (R. 285, 303–04, 305, 308, 311, 314, 316, 320, 321–22, 325–26, 329–30). However, they reveal no history of treatment for hearing impairment, nor a complaint about hearing loss with the exception of one visit related to an ear infection in 2010. *See id.* Further, medical records from three visits, including April 23, 2012, and April 30, 2012, specifically state that there were no problems with normal conversation. (R. 322, 326, 330). In his notes from the April 29, 2013, consultative examination, Emilio Gonzalez-Ayala, M.D., stated that Amor had difficulty hearing and noted that he needed to raise the volume of his voice to be understood. (R. 336). However, Dr. Gonzalez-Ayala also noted that Amor spoke well. *Id.* Finally, while the reviewing state agency physician found that Amor had moderate to severe sensorineuro hearing loss based on an audiological examination, he found no communicative limitations with speaking. (R. 72, 82). The ALJ, noting the "sparse medical record from multiple medical sources," specifically stated that the record reflected Amor's "longitudinal history, both negative and positive progress notes, and a comprehensive summary of her treatment," which gave her a "picture" of Amor's RFC. (R. 18).

The ALJ also considered the credibility of Amor's own statements against the medical opinions. On April 29, 2013, Amor reported to Dr. Gonzalez-Ayala that she had noticed a significant drop in hearing for the last few years, but that it had started in 1991. (R. 335).

7

However, Amor reported that she worked as a cashier in a department store from November 2002 to December 2012. (R. 223). A finding of not disabled may be supported where a claimant was able to, and did, work for several years while suffering from her impairments. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 & n.11 (5th Cir. 1987)).

Further, at the hearing before the ALJ, Amor testified that she was terminated from her last position for a reason unrelated to her alleged disability. (R. 30). When the ALJ asked Amor what prevented her from working, Amor responded, "[w]ell, I was having dizzy spells, pain in my joints. My sugar blood was just way too high and I wasn't feeling well anymore." (R. 31). Moreover, although the transcript reflects that Amor had trouble understanding some things and/or asked the ALJ, who was conducting the hearing by videoconference, to repeat questions, (R. 31, 33, 34, 35), the transcript does not reflect that Amor had the same difficulties when responding to the questions of her attorney, who was in the same room as her. (R. 36–40). The ALJ who was present at the hearing was in the best position to assess the intensity and persistence on Amor's ability to engage in conversation. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("We do not sit in *de novo* review nor may we re-weigh the evidence. The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing.") (citation omitted). Finally, in her decision, the ALJ specifically noted that the claimant reported that while she could not concentrate very well due to her hearing impairment, she could follow spoken instructions as long as they were loud and clear. (R. 17 (citing R. 260)).

In assessing Amor's credibility against the medical opinions, the ALJ stated that "while it appears that the claimant has suffered some impairments there are none that exclude her from working at the level prescribed in the [RFC]." (R. 18). Accordingly, based on the medical and

non-medical evidence that the ALJ stated she considered in reaching her finding on Amor's RFC, the Court finds there is substantial evidence supporting the ALJ's RFC finding. Moreover, because the ALJ posed a hypothetical to the vocational expert that included all of the limitations in the RFC, the Court finds no legal error in the ALJ's reliance on the vocational expert's testimony that Amor can perform her past relevant work as a cashier II and sales attendant. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this 27th day of September, 2018.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE